UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

Willa R. Cash,   Case No. 10-58607
                 Chapter 13
       Debtor.   Hon. Walter Shapero

_____/

# OPINION DECLINING APPROVAL OF PROPOSED CHAPTER 13 PLAN

## Introduction

The matters before the Court are Public Service Credit Union's ("Creditor") and Trustee's objections to confirmation (Docket Nos. 26 and 28) of Debtor's proposed Chapter 13 plan.

## Facts

Willa Cash ("Debtor") filed her Chapter 13 petition on June 7, 2010 and filed her schedules and a proposed Chapter 13 plan on June 21, 2010. She has listed unsecured debt totaling $33,789.05; priority debt totaling $9,285.50; and secured claims totaling $55,734.17. Her 60-month plan proposes monthly payments of $474.00, all of which would be paid various secured creditors, leaving no dividend for general unsecured creditors. The plan notes that her non-filing spouse will be paying the $550 mortgage payment on their jointly-owned home outside of the plan. Debtor, who is about 71 years old, testified that she and her husband have been separated and have had separate finances for some fifteen years and their understanding is that his sole obligation is to pay the mortgage.

1

More specifically, the plan provides for (a) a $229.71 monthly payment for her own Nissan vehicle (to be paid through the plan); and (b) a $449.88 (hereinafter rounded to $450) monthly payment outside of the plan and directly to Ford Motor Credit Company for a 2009 Ford Edge ("Ford"). The Ford obligation is expected to be paid off by April 28, 2014. The vehicle was purchased by Debtor as a co-obligor with her daughter; and it is only actually used by, and is in the continued possession of, the Debtor's grandson. Debtor's grandson is a 19 year old sophomore at Bowling Green State University in Ohio, which he is attending on a basketball scholarship. Though it is not clear, the scholarship conditions may such as preclude her grandson from working. He uses the vehicle mainly to travel between Detroit and college and for recreational purposes. Debtor testified that in addition to making the indicated car payment on the Ford, she also periodically gives her grandson additional varying sums of money for incidental personal expenses - sometimes totaling as much as $400 per month (an expense not specifically shown as such on her Schedule J). Other relevant facts are the following:

> (1) Debtor's Schedule I indicates monthly income of $2,929 from three sources, to wit: $698 (net of business expenses) from self employment; $1,364 from social security; and $867 from a pension or as retirement income. That schedule indicates, as noted, that she is married (but no spousal income is shown) and her grandson is 19 years old and is a dependent.
>
> (2) Debtor's Schedule J lists monthly expenses totaling $2,455, which includes the following expenses: $450 for the Ford and $500 for food. That schedule does not list expenses for rent or a home mortgage and utility payments, other than $215 for cell phone and cable/internet expenses; nor does it list an expense for her Nissan vehicle, but her plan indicates a cram-down of the secured obligation with respect to that vehicle to $229.71 per month. That schedule as filed shows an excess of monthly income over expenses of $474.
>
> (3) While the Debtor and her husband share the same residence, they apparently have lived separate personal (and to some extent except as herein noted) financial lives for some 15 years. While the record does not indicate the husband's income, he has consistently been

paying, and continues to pay, the $550 monthly home mortgage payment on their joint residence and, given the absence of payment of any such expenses on Debtor's Schedule J, he is apparently also paying its utilities.

(4) Debtor's daughter, and the mother of the grandson in question, lives separately; she filed a requested monthly income and expenses statement, which indicate that she is a State of Michigan Adult Protective Services Worker earning a total of $2700 per month; her with expenses total $2,500 (producing a slight surplus). Those expenses include an insurance expense of $300, which apparently includes insurance for the vehicle in question and possibly her own vehicle, and, also includes a separate "car note" expense of $365, possibly for her own vehicle.

Both the Trustee and the Creditor object to Debtor's proposed plan essentially because it proposes that she pay for a vehicle used by her grandson while her unsecured creditors receive nothing. They argue that Debtor must increase her best efforts under the plan because (1) if that $450 was instead paid to unsecured creditors over the life of the plan, it would amount to some $27,000 in payments to those creditors, or alternatively, (2) if the plan payments were increased by $450 starting after the vehicle was paid off, unsecured creditors might still receive some $9,000 - either one being substantial payments on the indicated unsecured debt.

## Discussion

11 U.S.C. § 1325(b)(1) provides in relevant part that:

If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan –

. . .

3

> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments unsecured creditors under the plan.

"Disposable income" is income which is received by the debtor and which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependant of a debtor. The Debtor has the burden of proof.

Query: Is the $450 monthly payment for the vehicle used by Debtor's grandson reasonably necessary for the Debtor's or a dependant's support? In *In re Beckerman,* 381 B.R. 841 (Bankr. E.D. Mich. 2008), this court stated, in the context of a motion to dismiss for abuse under 11 U.S.C. § 707(b), that unsecured creditors should not be required to bear the burden of a debtor's moral obligation to support his or her children financially while they attend college. *See also In re Siemen*, 294 B.R. 276, 279 (Bankr. E.D. Mich 2003) (the Debtors' support of their twenty year old some, thirty-one year old daughter and two grandchildren was not justified in a chapter 7 proceeding) (and cases cited therein); *In re Saffrin*, 380 B.R. 191, 192-94 (Bankr. N.D. Ill. 2007) (college expenses of a child over eighteen years old cannot be deducted when determining disposable income). While sometimes voiced in different legal settings, the Court believes their rationale is applicable to this setting.

Here, we are dealing with a grandchild, not a child, in a situation wherein (a) it would appear that, even including the payment on the vehicle in question (and possibly even after making some allowance for a payment for her own vehicle outside of the plan), Debtor has a monthly income surplus; keeping in mind that the Debtor listed $500 per month food expense for herself (a number which would appear excessive); (b) the child's mother is also living and contributing to that child's support by way of paying for the insurance on the Ford; (c) that same

4

grandchild also has a grandfather (Debtor's separated husband) whose income is undisclosed, but who apparently continues to be able to pay the mortgage and utility expenses on the Debtor's and his home; and (d) the Ford is a relatively new (2009) and expensive vehicle (best described in the recited circumstances as a rather excessively costly frosting on the educational cake), purchased and obligated for jointly (as stated in Schedule B) by Debtor and her daughter.

It is laudable that Debtor desires to assist in a manner she perceives as appropriate in her grandchild's college education, but the question, in the recited circumstances of this, a bankruptcy case, is whether that should be at the expense of her unsecured creditors whom she proposes will receive nothing under her proposed plan.

There is even a question, given the recited facts, whether the grandchild is actually a dependent at all, or of Debtor, given his apparent status as a full-time college student, attending college in northern Ohio on an athletic scholarship and the other facts. Assuming that he can be so classified, however, he is at best only partially dependent, and the totality of the facts requires a conclusion that Debtor's plan, including the questioned Ford payment, is not devoting all of her properly projected disposable income to payment of her unsecured creditors during its proposed 60-month plan period. The Court so concludes and declines to approve confirmation of the presented plan. Furthermore, the facts and reasoning are such as would also preclude approval of a suggested alternative plan permitting the Ford payment until the Ford secured obligation is satisfied in 2014, at which time the plan payment would increase appropriately.

**Signed on February 16, 2011**

                                                                /s/ Walter Shapero
                                                                 Walter Shapero
                                                                 United States Bankruptcy Judge